# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MISSOURI
# NORTHERN DIVISION

**TYLER DAVIS**

    Plaintiff.

v.

**ADAIR COUNTY AMBULANCE DISTRICT**

and

**KAT PROBST,**
**CHIEF EXECUTIVE OFFICER**
**OF THE ADAIR COUNTY**
**AMBULANCE DISTRICT**

    Defendants.

Case No.

JURY TRIAL DEMANDED

## COMPLAINT

Plaintiff, Tyler Davis, by and through his undersigned attorneys, for his Complaint against Defendants, the Adair County Ambulance District and Kat Probst, Chief Executive Officer of the Adair County Ambulance District, states as follows:

### INTRODUCTION, JURISDICTION AND VENUE

1. This is a civil action brought under 42 U.S.C. § 1983 for declaratory and injunctive relief, damages, and attorneys' fees and costs to redress Defendants' unlawful deprivation of Plaintiff's rights and privileges secured by the First and Fourteenth Amendments of the U.S. Constitution. This action includes supplemental state law claims for declaratory and injunctive relief, damages, and attorneys' fees and costs to redress Defendants' unlawful deprivation of

Plaintiff's rights and privileges secured by Article I, Sections 8, 9 and 25 of the Missouri Constitution and state law protection against wrongful termination for the performance of acts supported by public policy.

2.  Jurisdiction is conferred upon this Court by 28 U.S.C. § 1331; 28 U.S.C. § 1343; 28 U.S.C. § 1367; 28 U.S.C. §§ 2201-02; and 42 U.S.C. § 1983.

3.  Venue is proper under 28 U.S.C. §1391 because all Defendants are located in this district and the actions and omissions complained of herein took place within this district.

## PARTIES

4.  Plaintiff Tyler Davis is an individual who resides in Adair County, Missouri. Mr. Davis is a "citizen of the United States" within the meaning of 42 U.S.C. § 1983, and a "person" within the meaning of 42 U.S.C. § 1983.

5.  Defendant Adair County Ambulance District ("District") is organized under the laws of the State of Missouri as an ambulance district. *See* Mo. Rev. Stat. § 190.001 et seq.

    a.  The Board of Directors of the District ("Board") is comprised of six elected directors and possesses and exercises all of the District's legislative and executive powers. *See* Mo. Rev. Stat. § 190.055.

    b.  The District provides ambulance services "for the benefit of the inhabitants of the area comprising the district" and does not provide ambulance or other services statewide. *See* Mo. Rev. Stat. § 190.060(7).

    c.  The District is empowered "to levy and collect taxes." *See* Mo. Rev. Stat. § 190.074. The District is funded by one or more sales and/or property taxes levied by the District and fees and compensation collected for use of the ambulance service. Sales taxes collected by the director of revenue on behalf of ambulance

2

    districts that are placed into an "ambulance district sales tax trust fund shall not be deemed to be state funds and shall not be commingled with any funds of the state" before they are remitted to the ambulance district. *See* Mo. REV. STAT. § 190.040.

    d.    The District is empowered by statute "to fix, charge and collect reasonable fees and compensation for the use of the ambulance service according to the rules and regulations prescribed by the board from time to time" and "[t]o borrow money and to issue bonds, notes, certificates, or other evidences of indebtedness for the purpose of accomplishing any of its corporate purposes." *See* MO. REV. STAT. §§ 190.060(4), (5).

    e.    The District is able to sue and be sued in its name and payment of any money judgment issued in this matter would be paid by the District, not from the treasury of the State of Missouri.

    f.    The District is a "person" within the meaning of 42 U.S.C. § 1983.

6.    Defendant Kat Probst is the Chief Executive Officer of the District.

    a.    Ms. Probst is a full-time employee and highest-ranking executive of the District, reporting only to the Board.

    b.    The Board has delegated to Ms. Probst responsibility for the District's management and operations, pursuant to which she makes decisions about the District's policies and personnel.

    c.    Ms. Probst is a "person" within the meaning of 42 U.S.C. § 1983.

## FACTUAL ALLEGATIONS

7.    Plaintiff Tyler Davis was employed by the District as a part time Emergency Medical Technician since about May of 2018.

8. On or about November 5, 2022, Mr. Davis began speaking with other District employees about forming a union. When some expressed their support, Mr. Davis contacted officials of the International Association of Fire Fighters ("IAFF") and the IAFF's Missouri State Council of Fire Fighters about forming a new IAFF-affiliated Local union comprised of District employees.

9. In or around November 2022, Mr. Davis began making public Facebook posts on his personal account in which he shared posts made by IAFF affiliates and supporters about the importance of having a labor union. These posts were visible to the general public, including the Board and CEO Probst.

10. On November 17, 2022, a public notice was posted on the District bulletin board announcing an official meeting of the Board had been scheduled for November 21, 2022.

11. On November 18, 2022, Mr. Davis took a photograph of the meeting notice and shared it with his wife, Riley Davis, also an employee of the District. On November 20, 2022, Ms. Davis anonymously posted Mr. Davis's photograph of the meeting notice in a public Facebook community for Adair County news and events. She added a caption under the photograph that read "Wanna see where your tax dollars go? The Adair County Ambulance District has a board meeting tomorrow evening. It appears they will be discussing the purchase of equipment and employee salary." Mr. and Ms. Davis organized a contingent of District employees to attend the Board meeting.

12. In the early afternoon of November 21, 2022, CEO Probst sent a text message to Riley Davis asking her about her plans to attend the Board meeting that evening. CEO Probst wrote to Ms. Davis, "Is there something we need to discuss prior to tonight's board meeting?" and followed up by writing she "heard you were asking about wages and salary scale over the

weekend?" CEO Probst wrote to Ms. Davis, "Well you know me, I'm gonna go to the source when I hear things, not big on rumor mill." Ms. Davis responded, "Whats the rumor?" to which CEO Probst replied, "That some had questions that were going to be asked tonight at the board meeting."

13.     Tyler Davis, Riley Davis and two other District employees attended the November 21, 2022 public Board meeting.

14.     On November 25, 2022, Blake Roberts, a District field supervisor, called Ms. Davis into a meeting with CEO Probst and Daryl Crooks, the District's Chief Training Officer. CEO Probst asked Ms. Davis several questions about why she attended the November 21, 2022 public Board meeting, who she had contacted about attending the meeting, and why she contacted those particular employees. CEO Probst said that she suspected that Ms. Davis's attendance at the meeting with Mr. Davis and other District employees reflected "poor intentions." She also told Ms. Davis that the District maintains a written policy establishing a clear chain of command and that any violations of that policy, such as speaking with Board members directly, constitutes insubordination and "would not be tolerated." CEO Probst then reprimanded Ms. Davis about other alleged misconduct and performance issues, some of which were alleged to have occurred several months earlier but were never previously addressed.

15.     While the November 25th interrogation of Ms. Davis was in progress, Mr. Davis arrived at the District offices and saw that his wife was sitting with CEO Probst, Mr. Crooks, and Mr. Roberts and was visibly upset. Mr. Davis walked into the meeting and asked what was going on and why Ms. Davis was crying and being chastised. CEO Probst told him that it was a private meeting and asked Mr. Davis to leave the room. Mr. Davis asked to stay to support his wife, but CEO Probst said that the meeting would not continue with him present. Mr. Davis briefly left the room and returned approximately five minutes later, stating to CEO Probst, "If you're going to

take action against her, you're going to take action against me too." CEO Probst again asked Mr. Davis to leave the room. Mr. Davis left the room in frustration at the chastisement of his wife by CEO Pobst, tossing his District identification card over his shoulder. It was not directed toward any person and landed on the floor over ten feet away from the nearest person.

16. On December 2, 2022, CEO Probst presented Mr. Davis with a letter advising him that his employment with the District was terminated, effective immediately, as a result of his allegedly insubordinate refusal to leave the November 25th interrogation of Ms. Davis when directed and for acting in an "aggressive and threatening manner."

17. Other District employees have within the last year engaged in misconduct more aggressive and disruptive than any misconduct Mr. Davis is alleged to have committed and yet were not disciplined with suspension or termination.

18. Mr. Davis filed a timely grievance challenging his termination under the process set forth in the District's employment manual.

19. On or about January 23, 2023, the Board held a meeting at which it went into closed session. CEO Probst recommended to the Board that it deny Mr. Davis's grievance. CEO Probst presented to the Board materials purportedly supporting termination. These materials serving as the CEO's reasons for discharging Mr. Davis included Mr. Davis's posts on Facebook about the importance of unionizing and expressing support for the IAFF. The materials also included still images taken from the District's security camera footage on November 18, 2022, which depict Mr. Davis taking a photograph of the bulletin board with the public notice about the November 21, 2022 public Board meeting.

20.     After reviewing the materials supplied by Ms. Probst and before the Board took a vote on Mr. Davis's grievance, one Director stated to at least one other Director "this looks like retaliation."

21.     On or about January 23, 2023, the Board voted to deny Mr. Davis's grievance, approving CEO Probst's termination of his employment.

22.     On or about February 2, 2023, the President of the Board, Bill Crnic, wrote a letter to Mr. Davis stating, "the Board reviewed your grievance at our January 23, 2023 meeting in closed session." The letter informed Mr. Davis that, "After the review the Board agreed and voted that your actions, as mentioned in previous correspondence, were grounds for your termination and therefore all decisions are final."

23.     As a result of his termination from the District, Mr. Davis has suffered lost wages and benefits, mental and emotional harm, damage to his personal and professional reputations, and other injuries. In addition, as a result of his termination, Mr. Davis was required by the terms of a pre-termination written agreement with the District to reimburse the District approximately $7,000 for the cost of paramedic training classes the District had been paying for him to attend prior to his termination.

24.     Since Mr. Davis's termination, Mr. Davis and Ms. Davis have continued to attend District Board meetings, post the agendas for the meetings online, and encourage others to attend. But other District employees have stopped attending Board meetings, informing Mr. and Ms. Davis that they have decided to "lay low" for fear of losing their job with the District.

25.     Plaintiff seeks a jury trial in this matter.

**FIRST CAUSE OF ACTION:**
**42 U.S.C § 1983 – VIOLATION OF PLAINTIFF'S FIRST AND FOURTEENTH AMENDMENT RIGHTS TO FREE SPEECH AND ASSEMBLY**

26. Plaintiff realleges and incorporates the allegations set forth in paragraphs 1 through 25.

27. The right of the Plaintiff to speak freely about matters of public concern is protected by the First Amendment and Fourteenth Amendments to the U.S. Constitution. The public has a vital interest in free and open discussion on issues of public importance.

28. It is a violation of the First Amendment and Fourteenth Amendment of the U.S. Constitution for public employers, including the District, to discriminate against, discipline, or discharge its employees in retaliation for engaging as private citizens in speech about matters of public concern.

29. The right of the Plaintiff to assemble and engage in speech encouraging others to assemble to attend, observe or participate in public meetings of local government entities is protected by the First Amendment and Fourteenth Amendments to the U.S. Constitution. The public has a vital interest in citizen participation and observation of the public affairs of government entities, especially those with the power to levy taxes and incur debts.

30. It is a violation of the First Amendment and Fourteenth Amendment of the U.S. Constitution for public employers, including the District, to discriminate against, discipline, or discharge its employees in retaliation for assembling and/or encouraging other private citizens to assemble for the purpose of participating in, attending, observing and/or discussing public meetings.

31. Tyler Davis took the photograph of the notice of the November 20, 2022 public meeting of the Board at which District equipment purchases and salaries were on the agenda and

cooperated in its publication to a public Facebook community page. He actively encouraged coworkers to attend the November 20, 2022 public meeting of the Board and assembled with them at the meeting. These acts constitute speech by a private citizen about matters of public concern which is protected by the First and Fourteenth Amendments. These acts also constitute assembly for the purpose of observing and participating in government affairs which is protected by the First and Fourteenth Amendments.

32. Defendants, acting individually and/or jointly, discriminated against and discharged Mr. Davis for taking and cooperating in the publication of his photograph of the notice of the November 20, 2022 public meeting. In so doing, Defendants discriminated against, disciplined, and discharged Mr. Davis in retaliation for engaging in activity protected by the First and Fourteenth Amendments' guarantee of the rights of speech and assembly.

33. Through this conduct, Defendants retaliated against Mr. Davis in violation of the First Amendment and Fourteenth Amendment of the U.S. Constitution. Defendants' conduct unlawfully chills citizen participation in public government meetings and free and open discussion about issues of public importance and intimidates other District employees and members of the community from similarly engaging in protected speech and assembly.

34. CEO Probst, the Board and its directors have final policymaking authority in the decision to terminate Mr. Davis from the District and denied his subsequent grievance because of his speech and assembly activity.

35. Such conduct by Defendants was done in a knowing, willful, wanton, reckless, and bad faith manner, which violates clearly established constitutional provisions and rights which a reasonable person would have known.

36. As a direct, foreseeable, and proximate result of Defendants' unlawful conduct, Plaintiff has suffered, and continues to suffer, economic injury, mental and emotional distress, humiliation, anxiety, embarrassment, and discomfort, and other injuries and irreparable harm.

37. Under 42 U.S.C. § 1983, "every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." Thus, Defendants are fully liable to Plaintiff for his injuries resulting from Defendants retaliating against and terminating him in violation of the First and Fourteenth Amendments.

38. Defendants are also liable for Plaintiff's reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988(b).

**SECOND CAUSE OF ACTION:**
**42 U.S.C. § 1983 – VIOLATION OF PLAINTIFF'S FIRST AND FOURTEENTH AMENDMENT RIGHT TO FREE ASSOCIATION**

39. Plaintiff realleges and incorporates the allegations set forth in paragraphs 1 through 38.

40. The right of the Plaintiff to freely associate with other District employees and/or a labor association of other District employees is protected by the First Amendment and Fourteenth Amendment of the U.S. Constitution. The public has a vital interest in such free association.

41. It is a violation of the First Amendment and Fourteenth Amendment of the U.S. Constitution for public employers, including the District, to discriminate against, discipline, or discharge its employees for exercising their rights to free association.

42. Beginning in or around November 2022, Plaintiff made active and public efforts to organize District employees into a labor union. Plaintiff engaged in coordinated associational activity with other District employees to address the terms and conditions of their employment, including the posting of public messages in support of forming a labor association and the organization of coworkers to attend public meetings of their employer's governing body as a group. Plaintiff's right to so associate with his coworkers is protected by the First and Fourteenth Amendments.

43. At the time she terminated Plaintiff's employment, Defendant Kat Probst knew of his protected associational activities, including his Facebook posts supportive of unionization, his efforts to publicize the November 20, 2022 public Board meeting, and his attendance with a group of coworkers at the November 20, 2022 meeting.

44. At the time they denied Plaintiff's grievance challenging his termination, directors on the Board knew of his protected associational activities, including his Facebook posts supportive of unionization, his efforts to publicize the November 20, 2022 public Board meeting, and his attendance with a group of coworkers at the November 20, 2022 meeting.

45. Defendants discriminated against and discharged Mr. Davis because of his public support and efforts to organize District employees into a labor association and organize District employees to attend the November 20, 2022 Board meeting. In so doing, Defendants discriminated against and discharged Mr. Davis in retaliation for associating with his coworkers in violation of the First Amendment and Fourteenth Amendment of the U.S. Constitution. Defendants' conduct unlawfully chills Mr. Davis and his coworkers' free association with each other and the IAFF and intimidates other District employees and members of the community from similarly associating with or actively participating in the formation of a labor association.

46. Such conduct by Defendants was done in a knowing, willful, wanton, reckless, and bad faith manner, which violates clearly established constitutional provisions and rights which a reasonable person would have known.

47. As a direct, foreseeable, and proximate result of Defendants' unlawful conduct, Plaintiff has suffered, and continues to suffer, economic injury, mental and emotional distress, humiliation, anxiety, embarrassment, and discomfort, and other injuries and irreparable harm.

48. CEO Probst, the Board and its directors have final policy-making authority in the decision to terminate Mr. Davis from the District and denied his subsequent grievance because of his protected associational activity.

49. Under 42 U.S.C. § 1983, "every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." Thus, Defendants are fully liable to Plaintiff for his injuries resulting from Defendants retaliating against and terminating him in violation of the First and Fourteenth Amendment.

50. Defendants are also liable for Plaintiff's reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988(b).

**THIRD CAUSE OF ACTION:**
**MISSOURI STATUTES § 105.510 – VIOLATION OF PLAINTIFF'S RIGHTS TO FREE SPEECH AND TO FREELY ASSEMBLE AND ORGANIZE**

51. Plaintiff realleges and incorporates the allegations set forth in paragraphs 1 through 50.

52. The Missouri Constitution provides that "employees shall have the right to organize and to bargain collectively through representatives of their own choosing." MO. CONST., art. I, sec. 29. The Missouri Constitution also establishes the right to free speech and to "peacefully assemble and organize for any proper purpose," which includes a right of public employees to engage in union activities. MO. CONST., art. I, sec. 8, sec. 9.

53. Under Missouri Statutes Sections 105.500, *et seq.*, public employees may assert free speech and assembly rights provided by the First Amendment as well as article I, Sections 8-9 of the Missouri Constitution and seek redress for violations of those rights. Specifically, Section 105.510 gives public employees "the right to form and join labor organizations and to present proposals to any public body relative to salaries and other conditions of employment through the representative of their own choosing." MO. STAT. § 105.510. Section 105.510 mandates that "no such employee shall be discharged or discriminated against because of his exercise of such right[.]" *Id*.

54. Plaintiff's efforts to encourage his coworkers to form and join a labor organization, including his public Facebook posts supportive of union organizing, his sharing of posts by labor organizations affiliated with the IAFF, and his cooperation with coworkers to publicize constitute activities which are protected by these provisions of the Missouri Constitution and Missouri Statutes Section 105.510. *See* MO. CONST., art. I, sec. 8, 9, 29; MO. STAT. § 105.510.

55. Plaintiff was discharged and discriminated against because of his efforts to encourage his coworkers to form and join a labor organization, including his public Facebook posts supportive of union organizing, his sharing of posts by labor organizations affiliated with the IAFF, and his cooperation with coworkers to publicize and attend the November 20, 2022 Board meeting as a group in violation of Missouri Statutes Section 105.510.

13

56. CEO Probst, the Board and its directors have final policy-making authority in the decision to terminate Mr. Davis from the District and denied his subsequent grievance because of his activities protected by the Missouri Constitution's right to free speech and the right to peacefully assemble and organize.

**FOURTH CAUSE OF ACTION:**
**WRONGFUL DISCHARGE OF PLAINTIFF FOR HIS ACTS SUPPORTED BY PUBLIC POLICY**

57. Plaintiff realleges and incorporates the allegations set forth in paragraphs 1 through 56.

58. The rights of the Plaintiff to speak freely about matters of public concern, and to freely associate with other District employees and/or a labor association of other District employees, are protected by the First Amendment and Fourteenth Amendments to the U.S. Constitution. Further, Missouri law recognizes that forming and/or joining a union are acts supported by public policy rooted in the Missouri Constitution's protection of the right to organize and to bargain collectively through representatives of their own choosing. Mo. Const., art. I, sec. 29. Missouri law also recognizes that attendance at public meetings of elected bodies for the purpose of participating in or observing government affairs and encouraging others to do the same are acts supported by public policy rooted in the Missouri Constitution's protection of speech and assembly Mo. Const., art. I, sec. 8, sec. 9. These principles are supported under Missouri public policy.

59. In Missouri, it is unlawful to discharge an employee for acts supported by public policy.

60. Defendants' discharged Plaintiff because of his efforts to encourage his coworkers to form and join a labor organization, including public Facebook posts supportive of union

14

organizing and sharing of posts by labor organizations affiliated with the IAFF; efforts in concert with coworkers to publicize the November 20, 2022 public Board meeting; and, his attendance with a group of coworkers at the November 20, 2022 meeting. Such conduct by Plaintiff is supported by Missouri public policy, and by so discharging Plaintiff for engaging in such conduct, Defendants unlawfully discharged Plaintiff for engaging in conduct supported by public policy.

61. Because CEO Probst, the Board, and its directors were acting on behalf of the District in discriminating against and discharging Mr. Davis in retaliation for his acts supported by public policy, the District is liable for the unlawful conduct of CEO Probst, the Board and its directors complained of herein.

## RELIEF REQUESTED

**WHEREFORE**, Plaintiff respectfully requests the Court:

A. Declare that Defendants unlawfully violated Plaintiff's rights and privileges secured by the First and Fourteenth Amendments of the U.S. Constitution;

B. Enter a permanent injunction restraining and preventing Defendants from continuing to discriminate and retaliate against Plaintiff, from continuing to interfere with and infringe upon Plaintiff's rights under the First and Fourteenth Amendments of the U.S. Constitution, and from otherwise violating their obligations under the U.S. Constitution with respect to Plaintiff and all other persons similarly situated;

C. Declare that Defendants unlawfully violated Plaintiff's rights and privileges secured by Article I of the Missouri Constitution;

D. Enter a permanent injunction restraining and preventing Defendants from continuing to discriminate and retaliate against Plaintiff, from continuing to interfere with and infringe upon Plaintiff's rights under Article I of the Missouri Constitution, and from otherwise

violating Defendants' obligations under the Missouri Constitution with respect to Plaintiff and all other persons similarly situated;

  E. Declare that Defendants unlawfully violated Missouri Statutes Sections 105.500, *et seq.*

  F. Enter a permanent injunction restraining and preventing Defendants from continuing to so violate Missouri Statutes Sections 105.500, *et seq.*;

  G. Order Defendants to rescind the retaliatory, discriminatory, and otherwise unlawful discipline issued to Plaintiff;

  H. Order a complete and accurate accounting of all the compensation and relief to which Plaintiff is entitled;

  I. Award Plaintiff monetary damages in the form of backpay compensation, lost benefits, tuition costs that would have been paid by the District but for Plaintiff's wrongful discharge, unpaid entitlements, plus prejudgment and post-judgment interest;

  J. Award Plaintiff compensatory damages for the violations of Plaintiff's rights, his wrongful discharge, and the harm to his reputation, humiliation, emotional and mental anguish, and for other financial and consequential harm and injuries he has suffered as a result of Defendants' violative conduct;

  K. Award Plaintiff punitive damages to redress the knowing, willful, wanton, reckless, and bad faith nature of Defendants' violation of Plaintiff's Constitutional rights;

  L. Award Plaintiff punitive damages to redress the knowing, willful, wanton, reckless, and bad faith nature of the District's wrongful discharge of Plaintiff for acts supported by public policy;

  M. Order Defendants to reinstate Plaintiff to his former position, or in the alternative, award front pay;

  N. Award reasonable attorneys' fees and costs to Plaintiff; and

  O. Grant all other relief that the Court deems just and appropriate.

            Respectfully submitted,

            HAMMOND AND SHINNERS, P.C.
            13205 Manchester Road, Ste. 210
            St. Louis, Missouri 63131
            Phone: (314) 727-1015
            Fax: (314) 727-6804

            */s/ Emily R. Perez*
            EMILY R. PEREZ, #62537MO

            Arthur R. Traynor*
            Mooney, Green, Saindon, Murphy & Welch, P.C.
            1920 L Street, NW, Suite 400
            Washington, DC 20036
            (202) 783-0010
            atraynor@mooneygreen.com

            *Counsel for the Plaintiff*

            **Pro Hac Vice* admission pending*